## 70010. DOUGHTY v. THE STATE.
### (333 SE2d 402)

BEASLEY, Judge.

Three officers of the Columbus Police Department responded to a call to headquarters concerning a disturbance, possibly armed, at Doughty's residence. As the officers went to the front door, they heard people inside arguing. The police announced their presence, ringing the doorbell and pounding on the door. They continued this for several minutes. No one came so they began to walk back to the patrol cars.

As they got to the cars, they heard what they thought were firecrackers exploding. Officer Myers, who normally worked as a detention officer, but was along on this occasion to gain experience, saw wood on Doughty's front door splintering, realized the noise was gunfire, and was then hit twice in one arm. Officer Bowen got on the loudspeaker, announced that the house was surrounded, and told whoever was inside to come out with hands raised. A few seconds later, the intoxicated Doughty emerged holding up a .22 caliber rifle and saying, "don't shoot, don't shoot." He had a live .22 cartridge in his pocket, and several empty ones were found inside the house on the floor near the door.

Doughty was indicted for three counts of the offense of aggravated assault upon a peace officer. OCGA § 16-5-21 (a) & (c). After trial by jury, he was convicted of and sentenced for three counts of aggravated assault. OCGA § 16-5-21 (a) & (b). Doughty appeals.

1. Doughty maintains that the trial court erred in permitting the officers to testify concerning various statements allegedly heard by them while outside the house.

All three officers testified that as they stood at the front door trying to make their presence known, they heard someone inside the house state that the police were at the front door. Defendant objected to the testimony on the basis of inadmissible hearsay. The court overruled such objection apparently on theories of either res gestae or explanation of conduct.

First we question the characterization of the objected-to statements as hearsay. "Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1. Generally, for evidence to be inadmissible as hearsay, it is evidence of extrajudicial statements or declarations of the witness or of another when

offered as proof of the matter therein asserted. The rule does not exclude extrajudicial utterances offered merely to prove the fact of the making or delivery thereof. See 22A CJS, Criminal Law, § 718. See also Green, Ga. Law of Evidence, 2d ed., § 217. Hearsay evidence is not admissible to prove the truth of the fact asserted, unless the evidence constitutes a recognized exception to the general rule excluding hearsay. *Moore v. State*, 154 Ga. App. 535, 538 (268 SE2d 706) (1980).

Here, the statements were not offered for their truth; it is undisputed that the officers *were* outside. They were offered instead for their very utterance, to show that at least one person inside the house knew they were present and said so, allowing the inference that others, including appellant, then knew so too. Simply whether it was uttered, not whether it was true, was at issue. The witnesses who claimed to have heard it, and the witnesses who could have said it but claimed it had not been said, were present to be cross-examined as to the fact of utterance. Moreover, there is no question that Doughty was behind the door, inside the home, arguably in the presence of the sayer and of the officers who were standing on the other side of the door. Anything seen or heard by a witness in the presence of a defendant is admissible and does not constitute hearsay. *Grindle v. State*, 151 Ga. App. 164 (259 SE2d 166) (1979). The statements were not hearsay to begin with.

Assuming for the sake of argument that the statements are properly characterized as hearsay, it was not error to admit them as part of the res gestae.

"Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3.

What is res gestae of a given transaction must depend upon its own peculiarities of character and circumstances. The real test is whether the subject declarations are part of the occurrence to which they relate. Courts must allow some latitude in this matter. The admissibility of the declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the statutory requirements of being free from all suspicion of device or afterthought. *Wallace v. State*, 151 Ga. App. 171 (259 SE2d 172) (1979).

It is clear that the statements, if hearsay, were properly determined to be part of the res gestae. Even though the trial court expressed some initial doubt as to admissibility as part of the res gestae, it properly allowed the officer to testify as to the overheard declaration, for if the admissibility of evidence is doubtful, the rules of evidence require that it be admitted and its weight left to the jury. See

*Wallace v. State*, supra at 173. Whether the utterances were made or not depended on the credibility of the witnesses who were examined about it, i.e., the police who said they heard and those who were inside the house and could have said or heard.

Having determined that the statements were admissible since they were not hearsay, but even if they were, because part of the res gestae, we need not consider whether they were also admissible to explain conduct under *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982) and *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984).

"Where the judgment of the trial court is proper and legal for any reason, it will be affirmed regardless of the reason assigned." *Johnson v. Barrett*, 166 Ga. App. 353, 356 (304 SE2d 478) (1983).

2. Appellant next cites error in the trial court's permitting one of the officers to testify "that individuals inside the house could hear him [the officer] banging on the door with his night stick."

The actual testimony was: THE STATE: "Would anybody with normal hearing on the other side of that door have heard what you were doing to the door with your night stick?" OFFICER: "Yes, Sir."

"Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving the reasons therefor." OCGA § 24-9-65.

Here, the officer was not asked to give an opinion as to whether or not the people inside the residence would have heard the pounding on the door with the night stick, but rather in his opinion anybody with normal hearing would have. Appellant argues that a proper foundation was not laid for the opinion and that it was a "mere conclusion."

Determination as to whether a witness has established sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is for the trial court. *Dept. of Transp. v. McLaughlin*, 163 Ga. App. 1, 5 (292 SE2d 435) (1982). We find no abuse of discretion in the court's apparent determination of sufficiency here. The foundation had been laid by his prior testimony, which established where he was and what he had done so as to form such an opinion.

Moreover, as the question was phrased so as to glean opinion within the common knowledge, experience and education of mankind, it was not error to permit the testimony. *Buchanan v. State*, 168 Ga. App. 365, 366 (308 SE2d 860) (1983).

Even assuming that the officer's testimony on this point was an unsupported conclusion, it was rendered harmless inasmuch as there was ample evidence to support the inference (*Jones v. State*, 75 Ga. App. 610, 614 (44 SE2d 174) (1947)), for appellant testified on direct examination that he heard the loud banging at the door.

3. Appellant contends that the court erred by "refusing to permit

the defendant to question Det. Hall about his failure to talk to all the witnesses who would have been present at the time that the incident took place."

Detective Hall was the investigating officer at the crime scene. The record shows that appellant was allowed a thorough cross-examination of Hall, including questioning about individuals found at Doughty's residence. Appellant's counsel asked Hall whether he had spoken with another individual who was in the home, and when Hall responded that he had not done so, defense counsel asked "Now as I understand it you're in charge of the investigation of what supposedly happened and you don't think enough about the other witnesses other than police officers to find out what they're going to say happened that evening?" The court sustained the state's objection to such argumentative query, and defense counsel without further objection proceeded to question Hall regarding those interviewed in Hall's investigation.

We find no impropriety in the court's ruling here. Furthermore, the form or line of questioning the court did not allow explored was voluntarily abandoned and therefore is not even properly before us for review. *Chicola v. State*, 253 Ga. 773, 775, 776 (325 SE2d 379) (1985).

4. Doughty alleges that the trial court erred in permitting the state to propound a hypothetical question to one of appellant's character witnesses in that the question did not encompass all of the facts which had been admitted into evidence.

While it is true that the hypothetical question must embody the facts offered in evidence by the state against the defendant (*Curry v. State*, 155 Ga. App. 829 (273 SE2d 411) (1980)), there is no requirement that such question contains *all* of the facts in evidence. If this were so, it would be a pragmatic impossibility to propound hypothetical queries to character witnesses. Appellant does not allege that the facts included in the objected-to hypothetical were in any manner incorrect or distorted statements of that already in evidence or that material facts were omitted. Moreover, the matter is of little significance here, because the witness' answer was inconclusive. There was no error.

5. Appellant contends that the court erred in "failing to grant the mistrial after the prosecutor deliberately attempted to try an incident which occurred in 1980." Appellant argues that references to the 1980 incident improperly placed the defendant's character in evidence.

Doughty objects to the court's admission of certain cross-examination testimony given by his son, Anthony, who was asked if he was testifying the way that he was because he was afraid of his father. The state, continuing to attempt to find out if the son's testimony was biased out of fear of appellant, asked the son about a 1980 inci-

dent, "You didn't see him put the shotgun to your momma's head?" At this point defense counsel's only objection to the question was, "I don't think we're supposed to be trying the 1980 case. If we are, obviously I'm going to need to tell Ms. Doughty to go out because she'll obviously have to be a witness." The request to sequester appellant's wife was granted. Not until the close of the son's testimony did the defense make any further mention of objection to the state's questioning. At such time, outside the presence of the jury, the defense filed a motion in limine requesting that the state not be allowed to go any further into the subject 1980 incident and stated to the court, "we renew our motion for a mistrial. . . ." The record reflects that defendant had not made any prior motion for mistrial. In an abundance of caution, the court granted the motion in limine, granted an oral motion to strike testimony already given concerning any 1980 incident, and agreed to give an appropriate instruction to the jury in this regard. No mention of mistrial was again made until much later in the trial and based upon different grounds. At that time the judge offered to instruct the jury to disregard testimony concerning the prior incident, and defense counsel responded that he needed more time to consider whether he desired the court to so instruct the jury or what he would want done, if anything.

As we have noted, at the time of the son's testimony regarding the 1980 episode, defense counsel made no proper objection to the testimony; he merely made an observation about its possible impropriety and a request for sequestration.

" 'In order to raise on appeal contentions concerning admissibility of evidence "the specific ground of objection must be made at the time the evidence is offered, and a failure to do so will be considered as a waiver. All evidence is admitted as a matter of course unless a valid ground of objection is interposed." [Cits.]' " Benjamin v. State, 172 Ga. App. 3, 4 (321 SE2d 769) (1984). Moreover, defendant never made an initial motion for mistrial, but instead kept referring to renewals of a motion never made. In addition, the defense counsel stalled the court's offer to give cautionary instructions to the jury. Under these circumstances, even if we assume that the disputed testimony injected the appellant's character into evidence, the issue was not properly preserved for review on appeal. See Smith v. State, 172 Ga. App. 6 (321 SE2d 771) (1984). Furthermore, when the court in its charge to the jury instructed it not to consider the subject testimony, defendant did not object; nor did he again "renew" his motion for mistrial. " 'A ground of enumerated error based on the denial of defendant's motion for mistrial is without merit where the judge instructed the jury not to consider the testimony which brought on the motion and counsel thereafter failed to request further instructions or renew the motion for mistrial.' " Clyatt v. State, 126 Ga. App. 779,

786 (192 SE2d 417) (1972).

6. Appellant next contends that the court erred in "refusing the defendant's counsel the right to read a law to the court in the jury's presence."

The record discloses that this enumeration mischaracterizes what transpired at trial. In argument to the jury, defense counsel stated: "And we are requesting that the Court charge you, and we know the Court is going to charge you on bias and prejudice so we're going to request the Court charge you certain language that is in a case decided by the Georgia Court of Appeals, *Freeman v. Housing Authority* at 108 Georgia Appeals page 420. . . ." The court sustained the state's objection to this, in part upon the ground that there had already been a charge conference at which this had not been requested and that the court would take responsibility for instructing the jury as to the law. The record substantiates that indeed there had been an extensive charge conference at which the defense had ample opportunity to submit requests to charge.

While it is true that counsel may read and comment on the law to the jury in a criminal case (*Mullins v. State*, 163 Ga. App. 896 (296 SE2d 364) (1982)), it is also true that requests to charge must be timely made in writing; it is not error to deny an oral request. *Slaughter v. Linder*, 122 Ga. App. 144 (176 SE2d 450) (1970). Moreover, even if preventing counsel from quoting case holdings to the jury was error, it was harmless inasmuch as counsel was permitted to argue in closing the legal principles which he maintains were embodied in the unread case holdings.

7. Doughty asserts that the trial court erred in failing to charge on the "defense of good faith." He cites error in the court's failure to give the following charge: "I charge you that should you find that the defendant has acted in good faith and that the State has not proved beyond a reasonable doubt the essential element of criminal intent, then you would not be authorized to return a verdict of guilty, but should find the defendant not guilty. *5 Ga. 697* (1908)."

We are unable to consider the accuracy of the request based upon the cited authority, inasmuch as the case name is not given and the request appears to be supported by an erroneous case citation. When a written request to charge is inaccurate, inapt or incorrect, it is not error for the trial court to give the instructions as requested. *McKinney v. State*, 121 Ga. App. 815, 816 (175 SE2d 893) (1970). Furthermore, even if "good faith" would be a proper legal defense here or a credible one based upon the evidence, the clear thrust of the subject charge is the necessity of the proof of criminal intent beyond a reasonable doubt. The court's charge to the jury contained instruction on the requisite elements of the applicable crimes, including that of criminal intent. The court also gave the jury detailed instruction on

justification. The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principle, is not a ground for reversal. *Hudson v. State*, 171 Ga. App. 181, 183 (319 SE2d 28) (1984).

8. Lastly, appellant maintains error in the trial court's failure to give two requests to charge, one discussing the defense of habitation and the second, the defense of self or others.

The court charged the jury on use of force in defense of self or others (OCGA § 16-3-21) as well as the use of force in defense of habitation (OCGA § 16-3-23). Inasmuch as the requested principles were charged, there can be no complaint. See *Hudson v. State*, supra.

There being no error as enumerated, the conviction and sentence shall stand.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 8, 1985.

*James A. Elkins, Jr.*, for appellant.
*William Smith, District Attorney, Gray Conger, Assistant District Attorney*, for appellee.